### In the Matter of Max A. TOWNS, Debtor.

### Bankruptcy No. 86–2251–C.

United States Bankruptcy Court, S.D. Iowa.

June 10, 1987.

---

Reta Noblett-Feld, Cedar Rapids, Iowa, for debtor.

Robert K. Clements, Oskaloosa, Iowa, for PCA.

Donald F. Neiman, Des Moines, Iowa, trustee.

## ORDER ON APPLICATION TO AVOID LIENS

LEE M. JACKWIG, Bankruptcy Judge.

On January 21, 1987 an application to avoid liens filed by the debtor on November 5, 1986 and the resistance filed by the Production Credit Association of the Midlands (PCA) on November 26, 1986 came on for hearing in Des Moines, Iowa. Reta Noblett-Feld and David E. Grinde appeared on behalf of the debtor. Robert K. Clements and James M. Hansen appeared on behalf of the PCA.

The debtor filed an individual petition for relief under Chapter 7 on August 15, 1986. The debtor is a farmer. Pursuant to Iowa Code section 627.6(12),[1] he claims an exemption in farm machinery valued at $6,920.00. Pursuant to 11 U.S.C. section 522(f), the debtor has moved to avoid the nonpurchase money, nonpossessory liens the PCA has in the equipment. In resisting the application, the PCA argues that under principles of statutory construction, the 1986 amendments to the Iowa exemption statute (amendments), which raise the maximum farm equipment exemption from $5,000.00 to $10,000.00, cannot be applied retrospectively. The PCA also contends that retrospective application of the amendments violates the contract clause of the U.S. Constitution. This court disagrees. In accordance with the underlying principles governing the interpretation of the rules of statutory construction, this court finds that the amendments operate retrospectively. This court likewise concludes that retroactive application does not violate the contract clause.

## FINDINGS OF FACT

It is undisputed that prior to May 31, 1986 the debtor received loan proceeds from the PCA and, in return, granted the PCA security interests in, among other things, farm equipment.[2] At the time the

---

1. The court rendered this order prior to its receipt of the 1987 edition of the Iowa Code. Citations to subsections under Iowa Code section 627.6 were taken from Senate File 2270 (86 Acts ch. 1216, sections 4–6). The Code editor has decided to depart from the numbering of the subsections shown in Senate File 2270 apparently to take into account the striking of former subsection 5. Therefore, the citations to Iowa Code section 627.6 in this order do not reflect the Code editor's changes.

2. Had the obligations arisen after the effective date of the amendments, there could be no question the amendments would apply. Further, there is no question of applicability of the amendments to the "gap period" between the date of enactment and the effective date given this court's ruling that the amendments are applicable to obligations that had arisen prior to the effective date. Cf. *Matter of Eakes*, No. 83–1647–C (Bankr.S.D.Iowa, filed August 21, 1984) *aff'd sub nom. United States of America v. Eakes*, 76 B.R. 681 (S.D.Iowa 1985) (finding that the holding in *United States v. Security Industrial Bank*, et. al., 459 U.S. 70, 103 S.Ct. 407, 74 L.Ed.2d 235 (1982), wherein the Supreme Court determined that section 522(f)(2) of the 1978 Bankruptcy Code does not apply retroactively to abrogate liens acquired before the code's enactment, did not apply to liens acquired between the enactment date (November 6, 1978) and the effective date (October 1, 1979) of the Code).

debtor and the PCA executed the security agreements, Iowa law provided for a maximum farm machinery exemption of $5,000.00. Iowa Code section 627.6(10)(d) (1985).[3] The Iowa legislature amended section 627.6 by increasing the maximum farm machinery exemption to $10,000.00. Section 6 of Senate File 2270 (to be codified at Iowa Code section 627.6(12)(a)).[4] The amendments took effect May 31, 1986. As noted above, the debtor filed his petition under Chapter 7 on August 15, 1986.

## DISCUSSION

### I.

The PCA's contention that the amendments operate only prospectively pursuant to the rules of statutory construction requires a review of the relevant statutory provisions and case law.

A statute in Iowa is presumed to be prospective in its operation unless expressly made retrospective. Iowa Code § 4.5 (1986). Iowa courts "have recognized an exception to this rule where a statute relates solely to a remedy...." *Clemens Graf Droste Zu Vischering v. Kading,* 368 N.W.2d 702, 715 (Iowa 1985), *accord, Janda v. Iowa Industrial Hydraulics, Inc.,* 326 N.W.2d 339, 343–44 (Iowa 1982). A remedial statute has been defined as one that is designed to correct an existing law or to remedy defects in civil jurisprudence. *Schmitt v. Jenkins Truck Lines, Inc.,* 260 Iowa 556, 560, 149 N.W.2d 789, 791 (1967).

▪ Applying these principles to the case at bar, this court concludes that the amendments to Iowa's exemption law are remedial and therefore operate retrospectively. The amendments clearly were enacted to correct the inadequacy of Iowa's tools of the trade exemptions for both debtors engaged in non farming enterprises and debtors engaged in farming.[5] The in-

creases in the exemptions provide more meaningful relief and better serve the purposes underlying the exemption statute, namely enabling the debtor to survive financially and to help effect financial rehabilitation. *Matter of Hahn,* 5 B.R. 242, 244 (Bankr.S.D.Iowa 1980).

The general savings provisions found in Iowa Code section 4.13 do provide in part:

The ... amendment ... of a statute does not affect:

. . . .

2. Any validation, cure, *right,* privilege, obligation, or liability *previously acquired,* accrued, accorded, or incurred thereunder.

Iowa Code § 4.13(2) (1985) (emphasis added). However, this rule does not apply where such a construction is repugnant to the context of the statute. Iowa Code § 4.1; *Women Aware v. Reagen,* 331 N.W.2d 88, 91 (Iowa 1983). Even if the rights the PCA has in the debtor's machinery will be impaired by the application of the amendments, this court finds that the operation of section 4.13 is at odds with the focus of the amendments. The setting in which the amendments were passed is vividly described in the legislative finding that accompanied passage of the act of which the amendments are a part. The legislature declared:

1. The state of Iowa is suffering from a financial crisis in agriculture that affects the entire economic health of this state.

2. This financial crisis has grown to include the business communities which, together with the agricultural producers, form the core of the state's economy.

3. A large number of producers and farm families are being forced to leave farming and make a new start.

---

3. The value of musical instruments, one motor vehicle and interest in certain wages and tax refunds was also included in the $5,000.00 limitation. Iowa Code section 627.6(10) (1985).

4. Livestock and feed for the livestock may be claimed exempt along with implements and equipment but the combined value can not exceed $10,000.00.

5. Section 6 of Senate File 2270 places former Iowa Code section 627.6(10)(c), which addressed non farming tools of the trade, in a separate classification to be codified at Iowa Code section 627.6(11).

4. It is deemed to be in the best interest of the state to protect the business communities and the dislocated farm families affected by the financial crisis in agriculture.

Section 1 of Senate File 2270, 71st Gen.Assem., 1986. It is evident from these findings that the legislature intended financially distressed farmers to be the main beneficiaries of the act's remedial measures.[6] Application of Iowa Code section 4.13(2) would preclude the retroactive operation of the amendments—creditors' rights in farm machinery and equipment could be subjected only to a $5,000.00 exemption, at most, under preamendment law. As a result, all farmers who had granted creditors such security interests prior to the effective date of the act, May 31, 1986, would be deprived of the amendment's protections. Undoubtedly, the vast majority of financially strapped farmers in Iowa have granted security interests to creditors prior to the effective date. Therefore, application of section 4.13(2) would mean very few financially distressed farmers in Iowa would be able to take advantage of the amendments. The legislature could not have intended such an anomalous result given the clear intent expressed in the findings. For this reason, the operation of section 4.13 is declared repugnant to the context of the

amendments and, accordingly, section 4.13 is not controlling in this instance. The amendments operate retrospectively.

■ It should be noted that even if the amendments were found not to operate retrospectively under Iowa's statutory construction provisions, this court would still apply the amendments in accordance with 11 U.S.C. section 522(b). Exempt property is defined in part as "any property that is exempt under ... state or local law *that is applicable on the date of the filing of the petition....*" *Id.* (emphasis added). Further, courts have found that the extent to which exemptions are available to debtors must be determined at the time the bankruptcy is filed. *In the Matter of Zahn,* 605 F.2d 323, 327 (7th Cir.1979), *cert. den.* 444 U.S. 1075, 100 S.Ct. 1072, 62 L.Ed.2d 757 (1980); *In re Punke,* 68 B.R. 936, 939 (Bankr.N.D.Iowa 1987); *In re Hockinson,* 60 B.R. 250, 253–54 (Bankr.N.D.Ill.1986).

Parenthetically, this court notes that the PCA did not object to the debtor's claim of exemptions within *thirty days* of the first meeting of creditors as required by the order dated August 20, 1986 and Bankruptcy Rule 4003(b).[7] Also, no motion has been filed under Bankruptcy Rule 9006(b) to enlarge the time within which to file such an objection.[8] Yet, the PCA has objected to

---

6. Other protections provided by Senate File 2270 include:

a) Separate redemption of homestead at fair market value. Section 2 of Senate File 2270 (to be codified at Iowa Code section 654.16).
b) Restrictions on the enforcement of certain deficiency judgments. Section 3 of Senate File 2270 (to be codified at Iowa Code section 654.6).
c) Restrictions on garnishing a farmer's earnings. Section 6 of Senate File 2270 (to be codified at Iowa Code section 627.6).
d) Increasing the foreclosure moratorium period from one to two years. Section 7 of Senate File 2270 (to be codified at Iowa Code section 654.15).
e) Appropriating $5,000,000.00 for farmers under the agriculture loan assistance program. Section 9 of Senate File 2270.

7. Bankruptcy Rule 4003(b) provides in part that: The trustee or any creditor may file objections to the list of property claimed as exempt within 30 days after the conclusion of the meeting of creditors held pursuant to Rule 2003(a) or the filing of any amendment to the list unless

within such period, further time is granted by the court.

Local Rule 4005 provides that "[a]ny objection to debtor's claim of exemptions shall be filed no later than 15 days after the conclusion of the § 341 Meeting of Creditors." Given the conflict between the notices routinely issued by the clerk's office, in accordance with Bankruptcy Rule 4003(b), and Local Rule 4005, the local rule is considered null and void. The court notes that in the proposed amendments to the bankruptcy rules, Bankruptcy Rule 4003(b) remains essentially unchanged from its present form. Proposed Bankruptcy Rule Amendments, Rule 4003(b) (1986).

8. Bankruptcy Rule 9006(b) provides in part that: [W]hen an act is required or allowed to be done at or within a specified period of time by these rules or by notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if the request therefor is made before the expiration of the period orig-

the amount of the debtor's exemption claim in response to the debtor's motion to avoid liens. In many lien disputes similar to this one, debtors have questioned whether a creditor who fails to object timely to a debtor's claim of exemptions may object to the exemptions when resisting a motion to avoid liens.

A number of courts have addressed this issue and the results are varied. In the case of *In re Grethen*, 14 B.R. 221 (Bankr. N.D.Iowa 1981), the late Judge William W. Thinnes held that a creditor's knowledge of the fact the debtor planned to move to avoid liens under section 522(f) did not constitute "excusable neglect" for noncompliance with the time limit for objecting to exemptions. The court emphasized that the time limit was established to set a cutoff point at which debtors could be certain of the objections that had been made. The court also noted that if creditors were allowed to wait until section 522(f) actions were commenced, the time limitation rule would be undermined and more delay would result. *See also, In re Keyworth*, 47 B.R. 966, 970 (D.C.Colo.1981) (to allow an untimely objection "would be to impermissibly amend Rule 4003(b) which is clear and unequivocal"); *In re Blum*, 39 B.R. 897 (Bankr.S.D.Florida 1984) (30–day objection period not met and no enlargement of time requested pursuant to Bankruptcy Rule 9006(b)(3)).

Other courts have held to the contrary. For instance, in *In re Roehrig*, 36 B.R. 505 (Bankr.W.D.Ky.1983) the court found that failure to timely object to the debtor's exemption claim did not mandate that the property be deemed exempt. The court reasoned that if the exemptions were allowed to stand, the debtor would be creating a class of exemptions apart from the federal exemptions set forth in section 522(d) or the state exemptions authorized by section 522(b). *Id.* at 507–08.

■ This court is persuaded by the reasoning set forth in the *Grethen* decision. Compliance with rules such as Bankruptcy

Rule 4003(b) is imperative if onerous caseloads are to proceed as expeditiously as possibly. Moreover, a maxim of statutory construction is that a statute should be interpreted so as not to render one part inoperative. *Mountain States Tel. & Tel. Co. v. Pueblo of Santa Ana*, 472 U.S. 237, 105 S.Ct. 2587, 2595, 86 L.Ed.2d 168 (1985). Permitting a creditor who fails to object timely to exemption claims to make that objection in resistance to a section 522(f) motion renders Bankruptcy Rule 4003(b) meaningless. Finally, the concern expressed in the *Roehrig* opinion that strict adherence to the thirty day limit would create a new class of "exemption by declaration" is overcome by the recognized rule that there must be a good faith statutory basis for the exemption. *In re Bennett*, 36 B.R. 893, 895 (Bankr.W.D.Ky.1984).

As stated above, the PCA has failed to comply with the thirty day requirement of Bankruptcy Rule 4003(b). The undersigned realizes that the practice of her predecessor had been to permit creditors to object to exemptions after the thirty day period had expired. No doubt the PCA as well as many other creditors in the Southern District of Iowa have relied upon this practice. In fairness to the PCA, its objection will be considered timely filed. However, by virtue of this order, creditors are put on notice that, unless the requirements of Bankruptcy Rule 9006(b) are met, future failure to object to the debtor's exemption claims within the thirty day time period prescribed by Bankruptcy Rule 4003(b) will preclude consideration of such an objection in a section 522(f) action.

II.

■ Resolution of the PCA's argument that retrospective operation of the amendments is impermissible under the contract clause is governed by the district court's decision in *In the Matter of Reiste*, No. 87–153–B (S.D.Iowa, filed May 11, 1987). There, Chief District Judge Harold D. Vietor upheld Bankruptcy Judge Michael J.

inally prescribed or as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to

be done where the failure to act was the result of excusable neglect.

Melloy's[9] ruling that retroactive application of the amendment does not unconstitutionally impair contracts. Judge Melloy had incorporated by reference in the *Reiste* decision the conclusions of law set out in *In re Punke*, 68 B.R. 936 (Bankr.N.D.Iowa 1987). The *Reiste* decision and conclusions of law pertaining to the contract clause issue found in *Punke* are incorporated by reference in the instant case.

### CONCLUSION AND ORDER

WHEREFORE, based upon the foregoing facts and discussion and pursuant to 11 U.S.C. § 522(f), the court concludes the debtor is entitled to avoid the PCA liens on his farm machinery not to exceed a value of $10,000.00 in the aggregate as provided by Iowa Code section 627.6(12).

THEREFORE, the objections of the PCA are overruled and the relief requested in the debtor's motion is granted.

9. Sitting by designation.